THE CARSON MINING COMPANY v. HILL ET AL.

1. IMMATERIAL ERROR.

An injunction was issued to preserve matters in *statu quo* until the determination of the rights of the parties. The subsequent order dissolving it, whether right or wrong, did not affect the substantial rights of the parties, and, even if unwarranted, is no ground for a reversal of the final decree.

2. DECREE, INTERLOCUTORY.

The first decree entered in this action (which is set forth in the statement) is held to have been interlocutory.

3. SURETIES.

Sureties on an injunction bond, not being parties to the action, cannot participate in a review of the proceedings.

*Appeal from the District Court of Gunnison County.*

ON OCTOBER 18, 1892, appellees, Hill, Greenfield and Creighton, contracted to sell to W. B. Dungan and Wilbra Coleman a certain mining property in Hinsdale county in this state, and at the date of such contract executed a deed to the property to Dungan & Coleman as grantees, and placed it in escrow with the appellee Henry Derst, to be delivered to the grantees by Derst upon compliance by them with the conditions of the escrow agreement, which was:

"LAKE CITY, COLO., Oct. 18, 1892.
" To HENRY DERST, ESQ., Lake City, Colo.

" The enclosed deed, to Big Indian mining claim, in Carson mining district, Hinsdale county, Colorado, you will deliver to W. B. Dungan and Wilbra Coleman upon payment to you for our credit as follows:

$500.00 on delivery of this instrument,
$500.00 November 15th, 1892,
$2,000.00 April 15th, 1893,
$3,000.00 June 15th, 1893,

and the delivery to us of 22,856 shares of stock in The Carson Mining Company, divided as follows: 11,428 shares in

the name of A. S. Hill; 5,714 shares in the name of Henry Derst, trustee, and 5,714 shares also in the name of Henry Derst, trustee; said stock to be delivered as soon as possible, and within 20 days.  This stock is delivered to us upon this express condition and agreement: That in case we do not desire said stock at the expiration of this escrow, then and in that case the said W. B. Dungan and Wilbra Coleman are to be bounden to us to take up said stock and pay us therefor at that time 17½ cents per share, and each certificate shall bear such an agreement across the face of the same, and this escrow agreement shall cover such understanding and agreement.

" In case of defalcation in the payment of any of the sums of money mentioned in this escrow agreement, all sums paid before said defalcation to be forfeited to the parties making this escrow, and this deed to be returned to them.

" We agree to use every effort to obtain deed for ground mentioned in within deed as Cresco conflict, and, as soon as acquired, to place deed of same with these papers for delivery to said W. B. Dungan and Wilbra Coleman upon their compliance with the terms of this escrow agreement.

" The net proceeds of any ore taken from said mine shall be applied on the purchase price of the property.

" The said Coleman and Dungan shall post and maintain on the said Big Indian lode the statutory notice to workmen employed, that they can claim' no lien in the property.

" A. S. HILL.<br>
" ALBERT GREENFIELD.<br>
" E. P. CREIGHTON."

The first $500 was paid to Derst as agreed.  Shortly after The Carson Mining Company was organized, stock issued, and 22,856 shares of the capital stock of the company was issued as provided in the contract and placed in the hands of Derst. On the 20th day of October, 1892, Dungan & Coleman conveyed the mining property to appellant.  On the 15th of November, Derst was paid the $500 due, on the 15th day of

April, 1893, the $2,000 was paid, and on the 15th day of June, 1893, Dungan & Coleman tendered $3,000 to Derst, and demanded delivery of the deeds, which was refused by Derst, on the instruction of appellees, they demanding cash at $17\frac{1}{2}$ cents per share for the 22,856 shares.

The present suit was brought to restrain the delivery of the deeds by Derst, to restrain incumbrance and conveyance of the property, and for a decree requiring Derst to deliver the deed, etc. It is alleged in the complaint "that the said stock delivered * * * to the said defendants has never been returned * * * and the same is now in the possession of the said defendants or some of them and is still held and claimed by them;" also, "that plaintiff at all times since said 15th of June, 1893, has been ready and willing to pay said sum of $3,000, required to be paid under such instructions, *and hereby offers to pay the same and to bring the said sum into this court to be paid to the said defendants as this court may direct.*" In the answer of defendants occurs the following: "Deny * * * that the defendants or any of them refused to surrender up to the plaintiff the said 22,856 shares of stock, but aver that at and prior to the date upon which the last payment of $3,000 became due and payable, the defendants demanded of and from the plaintiff that it take up and redeem the said shares of stock as it was stipulated in said agreement and escrow instructions, and offered to surrender and deliver the said stock to plaintiff upon payment of the sum of $17\frac{1}{2}$ cents per share as thus stipulated, and the defendants and all of them did then and prior to the expiration of said escrow agreement signify to the plaintiff that they, the said defendants, did not desire to take said stock and would not accept the same, and that thereupon, and contrary to the express terms of the said agreement, the plaintiff refused to redeem and take up said stock as had been agreed in said escrow, and as they were bound to do in order to be entitled to said deeds; that the plaintiff has failed and refused to pay the sum of money which should have been paid in order to entitle it to said

deeds or either of them, and therefore, the said escrow agreement and option upon said property, as evidenced by said deeds and agreement, became and is void, forfeit and of no force."

A preliminary injunction was granted as prayed. A trial was subsequently had, resulting in this finding of fact, among others, by the court: "The court further finds that on said 15th day of June, 1893, and after the tender of said $3,000, the plaintiff in this action was notified by said defendants that they had elected not to keep said stock, and demanded of said plaintiff payment of 17½ cents per share for said stock, under the terms of said agreement, and that neither said plaintiff nor the said Coleman or Dungan paid said 17½ cents per share for said stock, and that defendants now have said stock in their possession ;" and proceeds as follows: " And, as conclusions of law, the court finds that the plaintiff is entitled to the relief demanded in the complaint in this action.

"Wherefore, on motion of said plaintiff's attorneys, it is ordered, adjudged and decreed that upon the payment of the sum of three thousand (3,000) dollars in to the clerk of this court, on or before the 9th day of May, A. D. 1894, that the said Henry Derst turn over and deliver to said plaintiff the deeds now in his possession in escrow, to the said Big Indian mining claim and the Cresco mining claim, and that upon the delivery of said deeds, all the right, title and interest of said defendants and each of them vest in said plaintiff; and that the plaintiff have judgment for costs and disbursements of this action, to be taxed herein."

The judgment and decree was filed April 28, 1893, and an exception taken by the defendants. On May 17, the following motion was filed on behalf of defendants:

"Come now the defendants in the above entitled cause, and move the court for a modification of the decree heretofore entered in this, to wit:

" That said decree shall be modified and amended so that

the temporary injunction heretofore granted shall be dissolved.

"That the defendants may have judgment against the plaintiff for the costs, and that the complaint of the plaintiff be dismissed. This motion is based upon the records and filed in this cause, and upon the fact that the plaintiff has wholly failed to comply with the order of the court that it pay in the hands of the clerk thereof, for the use of the defendants, the sum of three thousand dollars (3,000), on or before May 9, A. D. 1894, as provided in said decree, and has wholly failed to pay said sum or any part thereof within said time as aforesaid."

On the 14th of July following, and during the same term, the following decree was entered: "That the decree heretofore entered be and the same is hereby amended and modified so that, in case the plaintiff shall fail to pay into court or in the hands of the clerk thereof the said sum of $3,000 as ordered on or before the 9th day of May, 1894, then and in that case the injunction to be dissolved and the costs of this proceeding to be taxed to the plaintiff, and it further appearing that more than ten days having elapsed since the entry of said original decree, and the day for the payment of said money into court having long since elapsed, and said day having passed prior to the filing of said motion and application now under consideration, and it further appearing from the records herein and from the evidence of the clerk of this court that the plaintiff has wholly failed to comply with the provisions of said decree that it pay said sum into the hands of said clerk for the use of the defendants, and said sums not having been so paid within said time limited or at all, nor any part thereof, and the plaintiff failing to show why said order has not been complied with:

"It is further ordered, adjudged and decreed that the injunction heretofore granted be and the same is hereby dissolved and the deeds described in the pleadings to be delivered to the defendants, and that the defendants be and are hereby vested as against the plaintiff with title to the prop-

erty described in the pleadings, and that the costs of this proceeding be taxed to the plaintiff."

Messrs. DECKER & O'DONNELL, for appellant.

No appearance for appellees.

REED, P. J., delivered the opinion of the court.

The contention of counsel for appellant is that the court erred in modifying the first decree and entering the second, and may be briefly stated by copying a paragraph of the brief filed:

"While a portion of the order made July 14th purports to be an amendment of the judgment entered April 28th, in so far as it adds anything to that judgment, it is in effect a new judgment entered *nunc pro tunc*, as of April 28, 1894. The new portion is the condition that if the $3,000 is not paid by May 9th the injunction shall be dissolved and the costs taxed to the plaintiff.

"Admitting, for the purpose of the argument only, that this condition was a proper one to have been inserted in the original judgment at the time it was rendered, still the court had no power to make such an order *nunc pro tunc*. *Nunc pro tunc* entries should not be made merely to modify past acts or supply past omissions of the court." All the authorities relied upon for reversal are based upon this view of the case.

Before discussing this contention, it may be well to take up the finding of facts and the first decree. The court found that on the 15th of June, plaintiff was notified by the defendants that they had elected *not to keep the stock*, and demanded of the plaintiff payment of 17½ cents per share for it, and then proceeded to make its decree in favor of plaintiff, notwithstanding the fact that there was no compliance on the part of plaintiff or Dungan & Coleman with the terms of the contract in regard to the stock, nor an offer

to comply. The terms of the contract are express and need no construction. "That in case we do not desire said stock *at the expiration of this escrow*, then and in that case the said Dungan & Coleman are to be bounden to us to take up said stock *and pay us therefor at that time 17½ cents per share, and each certificate shall bear such an agreement across the face of the same* and this escrow agreement shall cover such understanding and agreement." The escrow agreement expired June 15th. The election was to be made at its expiration. It was made, if not previous to, upon such expiration. The taking up of the stock and paying the stipulated price was as much a condition precedent to the right to receive the deeds as any other provision in it.

The following allegation in the complaint was not sustained, nor was there any evidence in support of it: "*That the said stock delivered as aforesaid* * * * *to the said defendants had never been returned* * * * *and the same is now in the possession of said defendants or some of them, and is still held and claimed by them.*" It was delivered to the nominal defendant, Derst, where it remained, the defendants not having accepted it. That Derst was but a nominal defendant is clear. He was made the custodian of the papers and the agent or trustee of both parties to carry out the contract made, and no charges of a breach of the trust or of bad faith were made; and the court in its first decree, in finding that the plaintiffs, without having redeemed the stock, or redeeming it, were entitled to the delivery of the deeds upon the payment of the last installment of $3,000, erred. By a comparison of the two decrees, it will be observed that the only modification or amendment attempted was that in case the plaintiff failed to pay into court the $3,000, on or before the 9th day of May, the preliminary injunction was to be dissolved. The injunction was only ancillary, to preserve matters in *statu quo* until the determination of the rights of the parties, and the subsequent order dissolving it, whether right or wrong, in no way affected the substantial rights of

the parties, and, if unwarranted, is no ground for the reversal of the decree.

The first decree must be regarded as interlocutory. It depended upon a contingency, and could only be operative by the plaintiffs depositing with the clerk of the court $3,000 on or before the 9th day of May; and although in its complaint plaintiff offered to make the deposit, and the court so ordered, plaintiff made default. It is evident there could be no final decree until the expiration of the time, and the character of the decree was dependent upon compliance with the order. Without performance on the part of the plaintiff with the important prerequisite upon which the judgment was contingent, plaintiff was in no condition to complain of an amendment or abrogation. Failing to comply, plaintiff could assert no rights under it.

In view of the interlocutory decree, and its plain, unequivocal language, requiring the payment of $3,000 *to be paid into court* by a certain date, we are at a loss to understand how it could have been misunderstood by counsel, who say in argument: " The only liability imposed upon the plaintiff by the judgment entered April 28th was to pay the sum of $3,000. *The judgment provided no extraordinary means for enforcing the payment, and the plaintiff was entitled to suppose that only the ordinary means provided by law would be used.*" Comment is unnecessary. The order required it to be *paid into court*, not that the parties have judgment for it, to be collected by process from the court.

It is urged in argument by counsel for appellant that the court erred in the decree by failing to protect the sureties on the injunction bond. They say " that the injunction should not have been dissolved without providing that the sureties on the bond should not be liable." This contention may be very briefly answered. The condition of the bond is that they will pay all damages awarded in case the injunction is dissolved. No damages were awarded; hence no liability existed at that time, and until there was a liability claimed, sureties needed no protection. Second, the sureties were not

parties to the suit nor interested in anything that occurred, consequently cannot participate in the review.

It follows that the final decree of July 14, 1894, was correct and must be affirmed.

*Affirmed.*